# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

ROBERT MANUEL-GUY MCCOY,

    Defendant-Appellant.

UNPUBLISHED
February 24, 2015

No. 318820
Hillsdale Circuit Court
LC No. 13-373061-FC

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Following a jury trial, defendant, Robert Manuel-Guy McCoy, was convicted of assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 132 to 240 months' imprisonment, which is an upward departure from the guidelines range. Defendant appeals as of right. We affirm.

## I. PERTINENT FACTS

Defendant's conviction arose out of a late-night argument that turned physical, with defendant punching a bystander who attempted to intervene and come to the aid of her brother. On May 5, 2013, Joshua Childers and his girlfriend, Belinda Payne, the victim, attended the Mushroom Festival in Osseo, Michigan. Belinda's brother, Michael Payne, was at the festival as well. At approximately 3:00 a.m., defendant approached Michael and began discussing an old disagreement between the two men. The disagreement eventually turned physical. There was some dispute over who started the fracas, but at some point, defendant struck Michael, knocking him into the door of a nearby storage unit. Belinda, who saw the commotion, came to the aid of her brother, who appeared to be unconscious. Afraid that defendant would strike Michael again, Belinda told defendant to leave Michael alone. Childers stepped in front of defendant because he was afraid that defendant would strike Belinda. Brian Bowditch, one of defendant's acquaintances, struck Childers in the face, rendering him unconscious. When Childers regained consciousness, he saw defendant punch Belinda in the face. Recalling the incident at trial, Belinda testified that she did not jump on defendant or punch him before he punched her, but she may have yelled at him. She recalled that defendant punched her in the face, knocking her to the ground and rendering her unconscious. When witnesses found Belinda, she was lying on her back, bleeding from her face.

-1-

When police officers arrived, Belinda was sitting on the ground, confused and disoriented, with "severe swelling" on her face. One of the officers opined that the multiple marks on Belinda's face indicated that she had been punched more than one time. Belinda was later diagnosed with nose fractures, fractures of the basilar skull, and brain bleeding.

The prosecution charged defendant with assault with intent to commit great bodily harm less than murder. Before the jury began deliberations, defendant requested that the trial court instruct the jury on the offense of aggravated assault. Although defense counsel recognized that the offense of aggravated assault was "not a lesser included offense," defense counsel nevertheless requested that the trial court instruct the jury on the offense because he "believe[d] that the facts support that instruction." The trial court denied counsel's request, and the jury convicted defendant of assault with intent to commit great bodily harm less than murder.

## II. INSTRUCTION ON AGGRAVATED ASSAULT

Defendant argues that the trial court erred when it denied his request for a jury instruction on aggravated assault, MCL 750.81a(1). We review de novo claims of instructional error. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). However, to the extent that defendant argues his right to due process was violated because the jury was not instructed on aggravated assault, the claim is unpreserved. This constitutional claim was not raised before the trial court. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Under MCL 768.32, the statute which governs instructions on inferior offenses, *People v Mendoza*, 468 Mich 527, 531; 664 NW2d 685 (2003), a defendant is only entitled to instructions on necessarily included lesser offenses, not cognate offenses. *People v Cornell*, 466 Mich 335, 353-358; 646 NW2d 127 (2002). A necessarily included lesser offense is one in which the elements of the offense are completely subsumed in the greater offense. *Mendoza*, 468 Mich at 532 n 3. Meanwhile, a cognate offense shares several elements with the greater offense, but has one or more elements not found in the greater offense. *Id.* at 468 n 4.

The elements of assault with intent to do great bodily harm less than murder, the charged crime, are "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997) (citation omitted). "No actual physical injury is required for the elements of the crime to be established." *People v Harrington*, 194 Mich App 424, 430; 487 NW2d 479 (1992). A person is guilty of aggravated assault if he "assaults an individual without a weapon and inflicts serious or aggravated injury upon that individual without intending to commit murder or to inflict great bodily harm less than murder[.]" MCL 750.81a(1). Because aggravated assault has an element—infliction of injury—that is not an element of assault with intent to do great bodily harm, the elements of aggravated assault are not completely subsumed in assault with intent to do great bodily harm less than murder. Accordingly, aggravated assault is not a necessarily included lesser offense of assault with intent to do great bodily harm less than murder, and the trial court did not err when it denied defendant's request for an instruction on aggravated assault.

We find no merit to defendant's argument that the trial court's refusal to instruct the jury on aggravated assault resulted in a violation of defendant's right to due process. The case cited by defendant, *Berrier v Egeler*, 583 F2d 515, 518-519 (CA 6, 1978), provides no support for an argument that a defendant has a due process right to have the jury instructed on a crime that was not charged and is not a necessarily included lesser offense of the charged crime under MCL 768.32.

### III. INTIMIDATION BY THE TRIAL COURT

Defendant argues that the trial court was not impartial and denied him a fair trial when it intimidated and manipulated him into not testifying. Specifically, outside the presence of the jury, the trial court engaged defendant in the following discussion about whether he would testify at trial:

> *The Court.* Now, as far as you go, Mr. McCoy, as I understand it, you may or may not be testifying, but I just want to put on the record, you have discussed this with your attorney?
>
> *Defendant McCoy.* Yes, your Honor.
>
> *The Court.* You're testifying or you're not testifying?
>
> *Defendant McCoy.* I believe I am testifying today.
>
> *The Court.* You are testifying? Okay.
>
> *Defendant McCoy.* Yes.
>
> *The Court.* I just want to make sure that you knew the options. I mean, if you were not testifying, I'm going to instruct the jury that they are not to use that against you in any way what-so-ever. They cannot use that and there's a special instruction I would give them if you make that decision, okay?
>
> *Defendant McCoy.* Yes, sir.
>
> *The Court.* Or in the alternative, you certainly do have the right to testify, but if you testified then you're subject to cross-examination by Mr. Hassinger [the prosecutor]. You understand that?
>
> *Defendant McCoy.* That's perfectly fine.
>
> *Mr. Lyons* [defense counsel]. We're still -- we're still talking about it.
>
> *The Court.* No, I understand that and -- but you've gone through this and are still discussing it with Mr. Lyons?
>
> *Defendant McCoy.* Yes.

*The Court.* Okay, what I'll do, not to impose upon you, at sometime outside the presence of the jury, whatever decision you make, I'll simply probably just inquire from you on the record that that is your decision as a matter of trial strategy and that's what you would like to do, either testify or not testify. Okay?

*Defendant McCoy.* Yes, your Honor.

*The Court.* All right. Do you have any questions, sir?

*Defendant McCoy.* None.

At the conclusion of trial, outside the presence of the jury, the trial court noted that defendant decided not to testify. It asked defendant if that was his decision. Defendant replied, "At the end, yes, your Honor." The trial court then asked, "So, you knew you had the option to testify or not to testify, but as a matter of trial strategy, you chose not to do so?" Defendant answered, "Yes, your Honor."

Defendant did not object to the trial court's alleged intimidation and manipulation; therefore, the issue is unpreserved. *Metamora Water Serv, Inc*, 276 Mich App at 382. We review unpreserved claims of error for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764.[1]

A defendant is entitled to a neutral and detached trial judge. *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). While a trial judge has wide discretion in matters of trial conduct, a trial judge's comments and conduct are improper if they pierce the veil of judicial impartiality, meaning that they "were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." *People v Conley*, 270 Mich App 301, 308; 715 NW2d 377 (2006)(quoting *People v Burgess*, 153 Mich App 715, 719; 396 NW2d 814 (1986).

A defendant has a constitutional right to testify in his own defense. *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004). The ultimate decision whether a defendant will testify at trial remains with the defendant. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011).

---

[1] We recognize defendant's argument that, pursuant to *People v Smith*, 64 Mich App 263; 235 NW2d 754 (1975), general preservation requirements do not apply to claims of judicial partiality. However, because *Smith* was decided before November 1, 1990, it is not binding on the Court. MCR 7.215(J)(1); *People v McGhee*, 268 Mich App 600, 640; 709 NW2d 595 (2005). Cases that are binding on the Court, because they were decided after November 1, 1990, MCR 7.215(J)(1), such as *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011); *People v Conley*, 270 Mich App 301, 305; 715 NW2d 377 (2006); *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996), indicate that a defendant must raise a claim of judicial partiality before the trial court in order for the issue to be preserved.

The record does not reveal any intimidating or manipulating conduct by the trial court. The trial court wanted "to make sure" that defendant knew his "options" about testifying. In telling defendant about those options, the trial court told him that (1) if he did not testify, the jury would be instructed that it could not use his silence against him and (2) if he did testify, he would be subject to cross-examination by the prosecutor. Both of these statements were true. See M Crim JI 3.3; *People v Clary*, 494 Mich 260, 279; 833 NW2d 308 (2013). Nothing in the exchange between the trial court and defendant suggests that the trial court was trying to intimidate or manipulate defendant into not testifying. In addition, nothing in the record indicates that the trial court's statements had any effect on defendant. Defendant told the trial court that he and defense counsel were still discussing whether he would testify. Then, at the end of trial, defendant informed the trial court that it was his decision not to testify and that the decision was based on trial strategy. The record does not support defendant's claim that the trial court was biased against him and manipulated him into not testifying. There was no plain error. *Carines*, 460 Mich at 763.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that he was denied effective assistance of counsel for a variety of reasons. To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008). A defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). Because defendant did not move for a new trial or a *Ginther*[2] hearing, our review of defendant's claims is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

First, defendant argues that defense counsel was ineffective for failing "to target" the offense of aggravated assault. However, defense counsel did "target" the offense—he asked for an instruction on aggravated assault. Regardless, because defendant was not entitled to an instruction on aggravated assault, see Section II, *supra*, any action by counsel "to target" the offense would have been meritless. Counsel was not required to advocate a meritless position. *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009).

Second, defendant argues that defense counsel was ineffective for failing to object to the trial court's intimidation and manipulation of him into not testifying at trial. Because there was nothing improper about the trial court's statements to defendant, see Section III, *supra*, any objection by defense counsel would have been futile. Counsel was not ineffective for failing to make a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Third, defendant argues that defense counsel was ineffective for failing to call him as a witness. However, defendant made the decision not to testify. Because the ultimate decision as

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

to whether he would testify belonged to defendant, see *Bonilla-Machado*, 489 Mich at 419, defense counsel could not call him as a witness. Consequently, defense counsel's performance in not calling defendant as a witness did not fall below objective standards of reasonableness. *Uphaus (On Remand)*, 278 Mich App at 185.

Fourth, defendant argues that counsel was ineffective by not developing a self-defense theory in his cross-examination of Belinda and Michael. According to defendant, defense counsel should have asked Michael whether he hit defendant before defendant hit him and should have asked Belinda whether she jumped on defendant's back before defendant hit her. Decisions regarding the cross-examination of witnesses are matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999). On direct examination, Michael testified that defendant punched him. On her direct examination, Belinda testified that, other than telling defendant to leave Michael alone, she did nothing to defendant. She expressly denied that she jumped on defendant or punched him. Defendant failed to overcome the presumption that counsel's performance was objectively reasonable. Concerning Michael, defense counsel may have thought it was best not to get a direct denial from Michael that he hit defendant. And, with regard to Belinda, defense counsel asked whether she had been prepared to jump on defendant or hit him or otherwise fight in order to stop defendant from hurting Michael, to which she answered "No, 'cause [defendant's] big." Therefore, contrary to defendant's representations on appeal, defense counsel attempted to explore this very line of questioning during his cross-examination of Belinda. Defendant has failed to overcome the presumption that counsel's performance was sound trial strategy. *Stanaway*, 446 Mich at 687.

Finally, defendant argues that defense counsel was ineffective for failing to call a medical expert, who could have given the jury "some perspective on the real seriousness of [Belinda's] injuries." The decision whether to call an expert witness is a matter of trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Defendant has failed to overcome the presumption that counsel's performance in not calling an expert witness was sound trial strategy. *Stanaway*, 446 Mich at 687. A defendant must establish the factual predicate for his claim of ineffective assistance of counsel, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and there is no proof on the record that a medical expert would have testified favorably for defendant.

## V. SENTENCING

Defendant argues that he is entitled to be resentenced because the trial court failed to articulate substantial and compelling reasons to depart from the recommended minimum sentence range under the legislative guidelines and that the sentence imposed by the trial court was not proportional. We review for clear error whether a particular factor cited by the trial court exists. *People v Anderson*, 298 Mich App 178, 184; 825 NW2d 678 (2012). We review for an abuse of discretion "the trial court's conclusion that the factors provide substantial and compelling reasons to depart from the guidelines." *Id.* We also review the extent of the departure for an abuse of discretion. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). A trial court abuses its discretion when its result falls outside the range of principled outcomes. *Anderson*, 298 Mich App at 184.

Under the sentencing guidelines, a trial court must impose a minimum sentence that falls within the recommended minimum sentence range. MCL 769.34(2); *People v McCuller*, 479 Mich 672, 684-685; 739 NW2d 563 (2007). A trial court may only depart from the guidelines range if it has a substantial and compelling reason to do so, and it states on the record the reason for the departure. MCL 769.34(3); *Anderson*, 298 Mich App at 183. The sentencing guidelines through the prior record variables (PRVs) make elaborate provision for a defendant's criminal record. *People v Young*, 276 Mich App 446, 454; 740 NW2d 347 (2007). Thus, a trial court may not depart from the recommended minimum sentence range on the basis of the defendant's criminal record unless it first finds that the guidelines gave inadequate or disproportionate weight to the defendant's criminal history. *Id.* See also MCL 769.34(3)(b).

According to the trial court, there were four aspects of defendant's criminal record that were not considered or given adequate weight by the PRVs: (1) the number of defendant's felony convictions; (2) the number of defendant's misdemeanor convictions; (3) defendant's repeated violations of probation and parole; and (4) the repetitive nature of defendant's past crimes. After a review of the PRVs and defendant's extensive criminal history, we find no error by the trial court. The score provided for PRV 2, MCL 777.52, which was the highest score permitted, did not consider all of defendant's prior felony convictions. All of defendant's felony convictions were considered "low severity" convictions. PRV 2 provides a score of 30 points, the maximum score, for "4 or more prior low severity felony convictions[.]" MCL 777.52(1)(a). Here, defendant had more than four prior low severity felony convictions. As such, PRV 2 did not take into account all of defendant's prior felony convictions. Similarly, PRV 5, MCL 777.55, did not consider all of defendant's prior misdemeanor convictions. The record reveals that defendant had 15 prior misdemeanor convictions, and that, under the express language of MCL 777.55, only "3 or 4" of those misdemeanors were scored under PRV 5. Thus, not all of defendant's misdemeanor convictions were taken into account by the PRVs. Additionally, although PRV 6, MCL 777.56, considered the fact that defendant was on probation when he assaulted Belinda, it did not consider his numerous prior probation and parole violations. Further, no PRV considered the repetitive nature of defendant's past crimes. The trial court did not abuse its discretion when it concluded that these four aspects of defendant's criminal record constituted a substantial and compelling reason to depart. *Anderson*, 298 Mich App at 184. The trial court stated that, based on these factors, defendant was in need of long term discipline, reformation, and deterrence. Indeed, defendant's extensive criminal record showed that past convictions and past sentences of probation and prison time neither reformed defendant nor deterred him from committing future offenses. The trial court's decision to depart from the recommended minimum sentence range did not fall outside the range of principled outcomes. *Id*.

A sentence must be proportionate to the seriousness of the defendant's conduct and to the defendant in light of his criminal record. *People v Babcock*, 469 Mich 247, 262; 666 NW2d 231 (2003). When a trial court departs from the recommended minimum sentence range, it must explain why the sentence imposed is more proportionate than a sentence within the guidelines range. *Smith*, 482 Mich at 304. "This includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id.* at 311. "[I]f it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified." *Id.* at 304. "The requirement that the trial court justify the extent of the departure is not overly burdensome. The

court need only reasonably comply with the statutory articulation requirement in order to facilitate appellate review." *Id.* at 315.

Here, we find that the trial court's comments, while brief, were sufficient to satisfy the requirement that it justify the extent of the chosen departure. In this regard, the trial court stated that the guidelines were inadequate, that defendant was: "in need of long[-]term discipline, reformation, and deterrence. The Court finds your current guidelines score of 29-114 months *totally inadequate* to address these issues." (Emphasis added). Thereafter, the trial court imposed a sentence with an 18-month departure from the recommended minimum guidelines range. By explaining that a minimum sentence within the guidelines range was "totally inadequate" in light of defendant's conduct and criminal history—which the trial court concluded warranted a longer sentence, we find that the trial court satisfied its obligation to explain why the sentence imposed was more proportionate than a sentence within the guidelines range would have been. See *Smith*, 482 Mich at 315.

### VI. DEFENDANT'S STANDARD 4 BRIEF[3]

In addition to his appellate counsel's ineffective assistance of counsel claims, defendant in his standard 4 brief makes additional allegations regarding the effectiveness of his trial counsel. Because defendant did not move for a new trial or for an evidentiary hearing, our review of defendant's claims is limited to mistakes apparent on the record. *Davis*, 250 Mich App at 368.

According to defendant, there was a violation of his Fourth Amendment rights when an arrest warrant was issued before Belinda's basilar skull fractures were "proven" and counsel was ineffective for failing to notice and assert it. Defendant has abandoned the argument that there was a Fourth Amendment violation because he fails to cite appropriate authority or otherwise explain the claim. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) (stating that an appellant may not give an issue cursory treatment with little or no citation of supporting authority). Because counsel is not required to advocate a meritless position, *Chapo*, 283 Mich App at 369, and defendant has failed to show that any argument regarding the Fourth Amendment would have been meritorious, defense counsel was not ineffective for failing to notice and assert a violation of defendant's Fourth Amendment rights.

---

[3] In his standard 4 brief, defendant raises several issues that were raised by appellate counsel in defendant's brief on appeal, and we will not readdress them. First, defendant argues that defense counsel was ineffective for failing to call him as a witness. Second, defendant argues that the trial court erred when it failed to instruct the jury on aggravated assault. To the extent defendant argues that he was denied his rights to due process and a fair trial because the jury was not instructed on aggravated assault, the argument is abandoned. Defendant has failed to support the argument with citation to legal authority. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Third, defendant argues that the trial court failed to articulate a substantial and compelling reason to depart from the recommended minimum sentence range and that his sentence is not proportional.

Also, according to defendant, counsel was ineffective for failing to request a "preliminary hearing" before the trial court to obtain testimony from witnesses. The court rules entitle a defendant to a preliminary examination, MCR 6.110, and defendant had one in this case. Defendant was not entitled to another hearing for the purpose of obtaining testimony from witnesses. Thus, any request for a "preliminary hearing" would have been futile. Defense counsel was not ineffective for failing to make the futile request. *Fike*, 228 Mich App at 182.

Defendant further claims that counsel was ineffective for failing to request an instruction on self-defense. However, at defense counsel's request, the trial court instructed the jury on self-defense. Defendant's claim that defense counsel was ineffective because he failed to recall any of the witnesses to establish that defendant acted in self-defense is also without merit. Defense counsel cross-examined Belinda, as well as Michael and Childers, and defendant makes no specific argument regarding what additional questions counsel should have asked them. Defendant has failed to overcome the strong presumption that counsel's cross-examination of Belinda, Michael, and Childers constituted sound trial strategy. *Stanaway*, 446 Mich at 687.

Next, defendant argues that the trial court, through its questions and comments during the testimony of witnesses, denied him a fair trial. Because defendant did not object to any of the trial court's questions or comments, the issue is unpreserved. *Metamora Water Serv, Inc*, 276 Mich App at 382. We review unpreserved claims of error for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

A trial court may question witnesses in order to clarify testimony or elicit additional information. MRE 614(b); *People v Conyers*, 194 Mich App 395, 404; 487 NW2d 787 (1992). See also *People v Davis*, 216 Mich App 47, 52; 549 NW2d 1 (1996) ("As long as the questions would be appropriate if asked by either party and, further, do not give the appearance of partiality, we believe that a trial court is free to ask questions of witnesses that assist in the search for truth."). The questions asked by the trial court would have been appropriate if asked by either party. In fact, the trial court generally asked a question either to have a witness clarify his or her testimony or because the witness did not understand or failed to answer the question asked. The trial court's questions did not give the appearance of partiality.

We have reviewed the remaining challenged comments of the trial court, and none of them were of such a nature as to unduly influence the jury. *Conley*, 270 Mich App at 308. The comments did not reveal any partiality by the trial court, and there was no plain error.

Defendant claims that the trial court erred in scoring 10 points for OV 4. Under the sentencing guidelines, a trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error exists when this Court is left with a definite and firm conviction that a mistake was made. *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 4 is to be scored at ten points if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). The fact that the victim has not sought

professional treatment is not conclusive. MCL 777.34(2); *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). There was evidence that Belinda suffered nightmares about the assault after it occurred and that she still occasionally has them. Based on this evidence, the trial court did not err when it scored OV 4. See *People v Drohan*, 264 Mich App 77, 90; 689 NW2d 750 (2004).

Finally, defendant argues that, as evidenced by two statements, the trial court was prejudiced against him. Because defendant did not object to the two comments, the issue is unpreserved. *Metamora Water Serv, Inc*, 276 Mich App at 382. We review unpreserved claims of error for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763.

The first statement occurred at the hearing on defendant's motion to quash the bindover. In summarizing Belinda's preliminary examination testimony, the trial court stated, in part, that Belinda got hit in the nose, "like a sucker punch," by defendant. A review of Belinda's testimony reveals that the trial court's summary was accurate. The second statement occurred at the end of the cross-examination of Childers, when after Childers finished answering a question, the trial court said, "A great opportunity -- [.]" Because the trial court was interrupted by the prosecutor, it is unknown what the trial court intended to say. Neither of these statements reveals a trial court that was not neutral and detached. *Cheeks*, 216 Mich App at 480.

Affirmed.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

-10-