# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TAMARA JOY STEPHENS,

Defendant-Appellant.

UNPUBLISHED
March 31, 2016

No. 324802
Oakland Circuit Court
LC No. 2013-247948-FC

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right from her conviction following a jury trial of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, unlawful imprisonment, MCL 750.349b, and assault with a deadly weapon (felonious assault), MCL 750.82. The trial court sentenced defendant as a fourth habitual offender, MCL 769.13, to prison terms of 30 to 50 years for CSC-I, with credit for 28 days served, 10 to 20 years for unlawful imprisonment, and 3 to 15 years for felonious assault. The unlawful imprisonment and felonious assault sentences are concurrent, but consecutive to the CSC-I sentence. We affirm.[1]

## I. FACTS

The crimes at issue in this matter involve defendant, defendant's two sisters (codefendant Kelli Hyde, who appeals separately, and Anika Garnes, who pleaded guilty and whose application for leave was previously denied), defendant's mother (Theola Garnes, who also appeals separately), and their apparent belief that the victim stole two rings from Hyde. When the victim visited defendant's house, where Hyde was living, the victim was taken to a bedroom and asked about the rings. The victim testified that when she denied taking the rings, Hyde began to beat her with her fists while defendant repeatedly struck her with a bat. The victim testified that defendant also sodomized her with the bat. Later, the victim was escorted to a SUV and driven from the home. The victim's cellphone, voter registration card, and Social Security card were taken from her, and she was left in a sparsely populated street in East Detroit. She

---

[1] This appeal is submitted with the appeals in Docket Nos. 324035 and 324804.

went to the first house she saw, where the owner allowed her to use a phone to summon assistance to take her to Henry Ford Hospital, where her injuries were documented and treated.

Patrick Herek, M.D., the emergency room doctor who examined the victim, testified that he documented no abnormalities to the victim's head and face area, some abrasions on the back of her neck, tenderness on her left middle back, and an anal tear. Herek said that the victim also had multiple abrasions on both arms, contusions on her buttocks and both knees, tenderness over her left big toe and left pinkie toe, and a shallow, one-centimeter laceration on her right shin. He testified that he had no way of knowing what caused the injuries. However, he noted that if a toe hurts where an x-ray shows an irregularity, it is general practice to assume that the injury is new.

The following day, the victim underwent an examination by Samantha Warkentien, a sexual assault nurse examiner, who documented her injuries related to the sexual assault. Warkentien identified three tears to the perineum that were not in the healing stage, the largest of which was 10.980 millimeters in size. Warkentien testified that she could not say what caused the tears, that they were too small to illustrate with one's hand, and that they could be consistent with anal sex.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first claims that she was denied effective assistance of counsel when her trial attorney failed to call an expert witness that could testify to the fact that the victim's anal fissures could have been caused by something other than sexual assault with a bat. Whether defense counsel performed ineffectively is a mixed question of law and fact; we review for clear error the trial court's findings of fact, and review de novo questions of constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). "[C]ounsel's ineffective assistance must be found to have been prejudicial in order to reverse an otherwise valid conviction." *People v Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to the defendant, *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), remanded on other grounds 436 Mich 866 (1990), or by showing a failure to meet a minimum level of competence, *People v Jenkins*, 99 Mich App 518, 519; 297 NW2d 706 (1980). Defense counsel has wide discretion as to matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

It is unclear based on the existing record whether defense counsel did consult an expert witness and made the strategic decision not to call the witness because of the possibility that the evidence would, on balance, be detrimental to defendant's case. Defendant has provided an offer of proof with her motion to remand that identifies a medical journal article entitled, "Common Conditions that Mimic Findings of Sexual Abuse." However, she has not provided any evidence

-2-

that defense counsel did not consider the possibility of such testimony. Thus, she has failed to establish the factual predicate for her argument.

Assuming that counsel did not purse an expert witness, counsel's decision was reasonable. Plaintiff's case was based largely on the victim's credibility. On cross-examination, defense counsel impeached the victim with inconsistent testimony regarding how many times the bat was inserted into her and emphasized how little physical evidence there was of the beating she said she had suffered. In addition, he established on cross-examination that neither Dr. Herek nor nurse Warkentien could say what caused the victim's injuries, and that her anal injuries could be consistent with anal sex. Further, he established that the bat had not been tested for fecal matter. Under these circumstances, defense counsel's strategy was reasonable. Counsel is not ineffective merely because a strategy is unsuccessful. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

## B. LACK OF REMORSE

Defendant next claims that the trial court violated her due process rights by using her alleged lack of remorse to impose an unnecessarily harsh sentence. Defendant did not preserve this issue for appellate review; therefore, our review is "plain error effecting defendant's substantial rights." *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Even if prejudicial error is shown, reversal is not mandated unless "the 'error resulted in the conviction of an actually innocent defendant' or . . . the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Id.*, quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (additional quotation marks and citations omitted by *Kimble* Court; alteration by *Carines* Court). Defendant concedes that the trial court imposed a sentence within the minimum guidelines range.

A defendant's First Amendment right against self-incrimination extends to the sentencing phase and "is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.'" *People v Conley*, 270 Mich App 301, 314; 715 NW2d 377 (2006) (internal quotation marks and citations omitted). "'A court cannot base its sentence even in part on a defendant's refusal to admit guilt.'" *Id.*, quoting *People v Yennior*, 399 Mich 892, 892; 282 NW2d 920 (1977). When determining whether a sentencing court improperly considered a defendant's refusal to admit guilt, the Court looks to the following three factors: "'(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe.'" *People v Payne*, 285 Mich App 181, 194; 774 NW2d 714 (2009), quoting *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987).

Defendant contends that her sentence was excessively harsh, and she attributes this harshness to the trial court's alleged retaliation for defendant's "near silence." The relevant colloquy between defendant and the court during sentencing ran as follows:

> *The court*. . . . Ms. Stephens, anything you wish to state to the Court before I impose sentence.

*Defendant*. I'd like to apologize to the Court and to [the victim].

*The court*. I beg your pardon?

*Defendant*. I would like to apologize to the Court and to [the victim].

*The court*. Ms. Stephens, I don't even know where to begin. I've gotten all of these letters . . .

All of these letters extol your virtues and how wonderful you are, what a caring person you are, what a giver you are. The only thing I saw that you gave on that particular night was to ruin someone's life, violate them in the most unconceivable and unthinkable way, and for what, because you suspected that she stole a ring. I don't care if it was the Hope Diamond. No one deserves to be treated that way. And after she was violated, she was taken to an area of Detroit and dumped like garbage, without any concern of what would happen to her after that.

And even now in your statement in your PSI, you said nothing. Even now, you want to apologize to me and the County. No remorse for your actions. So as I said, I don't know who this person is. I do know who the person is who's standing before me. And that is an individual who instead of . . . using words and reason used force and assaulted someone in the most heinous way. And for that, you will have to pay the price.

Although the court did observe that defendant did not show remorse for her actions, the court's observation was in the context of its remarks about the letters submitted on defendant's behalf, and served to draw attention to the contrast between defendant's reputation among her supporters and her behavior toward the victim. The trial court did not attempt to get defendant to admit her guilt nor imply that her sentence would be less if she did. *Payne*, 285 Mich App at 194. Rather, it is clear the trial court based its sentence on the "heinous" nature of defendant's actions.

## C. SCORING OV 7

Finally, defendant contends that the trial court erred by scoring OV 7 at 50 points because defendant's conduct did not exceed the minimum necessary to commit either of the offenses scored, i.e., CSC-I and unlawful imprisonment. "[T]he circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The application of the facts to the law is a question of statutory interpretation, which the Court reviews de novo. *Id*.

OV 7 addresses aggravated physical abuse, MCL 777.37(1), and is designed to respond to particularly heinous instances in which the defendant acted to increase fear by a substantial or considerable amount. *People v Glenn*, 295 Mich App 529, 536; 814 NW2d 686 (2012), rev'd on other grounds sub nom *Hardy*, 494 Mich 430. At the time defendant was sentenced, the following scoring criteria applied under MCL 777.37(1):

-4-

(a) a victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense……………………………………………………………50 points

(b) no victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense…………………………………………………………..0 points

"As used in this section, 'sadism' means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.77(3). "Conduct designed to substantially increase the fear and anxiety a victim" does not have to be similarly egregious to sadism, torture, or excessive brutality for OV 7 to be scored at 50 points. *Hardy*, 494 Mich at 443. The relevant inquiries are (1) whether the offender engaged in conduct beyond the minimum required to commit the offense, and if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount. *Id.* at 443-444.

The minimum defendant had to do to satisfy the elements of the CSC-I charge against her was to use force to insert the bat, "however slight[ly]," into the victim's anus. MCL 750.520a(r). However, the victim testified that defendant pushed the bat deeper and deeper into her until she defecated on herself. The victim testified that the experience was painful, and that, as a result, she could not use the bathroom for some time. Furthermore, it is reasonable to conclude that the use of an inflexible object that the victim was being beaten with to penetrate her was designed to obtain compliance by increasing the victim's fear and anxiety. We note that the trial court also scored OV 7 for defendant's unlawful imprisonment conviction, which, briefly, we find appropriate in light of the violence defendant inflicted during the victim's imprisonment and defendant's complicity in dropping the victim off in Detroit without her cellphone.[2]

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens

---

[2] Defendant has brought to our attention the recent case of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). However, defendant only asks us, without anything more than a vague reference to a holding in that case, to "consider" it. This does not constitute articulation of anything even approaching an argument. Defendant does not even announce a position and leave it to this Court to rationalize it, which itself would be impermissible. See *People v Payne*, 285 Mich App 181, 195; 744 NW2d 714 (2009). Defendant barely even suggests an outcome that this Court is, apparently, expected to reach, states no explanation for why doing so is proper in this case, and indeed merely implies that an error occurred. Failure to address the merits of an argument constitutes abandonment thereof, and here, defendant does not even provide an argument. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). We therefore decline defendant's invitation to "consider" the implications *Lockridge* might have to this case.