# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHAD HOWARD PATTERSON,

        Defendant-Appellant.

UNPUBLISHED
May 12, 2016

No. 326555
Eaton Circuit Court
LC No. 14-020308-FH

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendant was convicted by a jury of three counts of fourth-degree criminal sexual conduct (CSC IV), MCL 750.520e(1)(a) (sexual contact with a person who is at least 13 but less than 16 years of age) involving two separate complainants. He was sentenced as a third-offense habitual offender, MCL 769.11, to concurrent terms of two to four years in prison. Defendant appeals as of right. Because defendant was not denied the opportunity to present a defense, the trial court's response to defendant's comments during witness testimony did not deprive defendant of a fair and impartial trial, and the trial court did not abuse its discretion by denying defendant's motion for a new trial, we affirm.

The charges in this case arose from allegations that defendant had sexual contact with complainants MH and MB, who were 13 years old at the time. Defendant has four children with MH's sister and MH's sister also has three other children from another relationship. The instances of sexual contact in this case occurred while MH and her friend MB were babysitting these children in the home defendant shared with MH's sister.

Defendant denied the allegations of sexual abuse. At some point, defendant's relationship with MH's sister had ended. At trial, the main defense theory was that MH fabricated the allegations to aid her sister in a custody dispute. The defense also noted that MH had a potential motive to lie insofar as defendant made a report, or threatened to make a report, to Child Protective Services (CPS) about MH's purported misconduct during a game of truth-or-dare with her sister's children. Nonetheless, the jury found defendant guilty, and the trial court sentenced defendant as noted above. Defendant now appeals as of right.

## I. DEFENDANT'S RIGHT TO PRESENT A DEFENSE

-1-

Defendant first argues that he was denied his right to present a defense when the trial court excluded witness testimony that complainant MH sexually abused her sister's children during a truth-or-dare game. According to defendant, MH fabricated her allegations against defendant because defendant reported MH, or threated to report MH, to the authorities. At a minimum, defendant maintains that the trial court should have conducted an in-camera hearing to evaluate the relevance of this evidence.

Under the United States and Michigan Constitutions, a criminal defendant has a right to present a defense. *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006), citing US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 17, 20. However, this right is not absolute, and a "trial court may exclude evidence if its probative value is outweighed by factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *People v Orlewicz*, 293 Mich App 96, 101; 809 NW2d 194 (2011).

> Similarly, defendants are entitled to present witnesses in their defense, but again that right is not absolute. To the contrary, it requires a showing that the witness' testimony would be both material and favorable to the defense. The underlying question is whether the proffered evidence or testimony is relevant and material, or unfairly prejudicial. [*Id.* at 101-102 (quotation marks and citations omitted).]

Generally, Michigan's rape-shield statute, MCL 750.520j, precludes the presentation of evidence of a victim's prior sexual conduct unless (1) it involves the victim's conduct with the defendant or (2) the specific instances of sexual activity show the source or origin of semen, pregnancy, or disease. However, evidence that is not admissible under these statutory exceptions may nonetheless be relevant and admissible in order to preserve a defendant's constitutional rights. *People v Benton*, 294 Mich App 191, 197; 817 NW2d 599 (2011). In particular, evidence of a victim's past sexual conduct may be relevant and admissible where, for example, it shows a complainant's bias, it demonstrates an ulterior motive for making a false charge, or it provides another basis for a child's age-inappropriate sexual knowledge. *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984); *People v Morse*, 231 Mich App 424, 436; 586 NW2d 555 (1998).

In this case, defendant's argument rests on the purported exclusion of the details of a truth-or-dare game, which defendant claims provided MH with a motive to lie insofar as defendant threatened to report MH to the authorities for sexually abusing children during this game. Regarding the particulars of the allegations against MH, the prosecutor explained that "what one of [the defense] witnesses told me was that the dares were to lick the dog's penis, to lick [MH's] vagina, and to kiss each other." However, in relation to these specifics, defendant had no intention of calling the children involved with the game, nor did he make an offer of proof to detail what admissible testimony he could offer to support his claims that MH abused the children. See MRE 103(a)(2); *People v King*, 297 Mich App 465, 476; 824 NW2d 258 (2012). Instead, his witness list contained the names of various individuals uninvolved with the game, who could at most provide potential hearsay testimony on this subject.

Before trial, the prosecutor sought to exclude the proposed testimony of three witnesses on the defense witness list, including James Hargitt. Alternatively, the prosecution argued that all witnesses should be precluded from testifying about the details of the allegations of sexual

abuse made against MH because testimony about the truth-or-dare game from anyone other than the children involved would be hearsay and it was irrelevant. After hearing the parties' arguments, the trial court declined to rule on the admissibility of this evidence before trial, explaining that the prosecutor could object to individual questions at trial and the court would then make rulings at that time.

Defendant now asserts that the trial court somehow deprived defendant of his right to present a defense. However, defendant fails to specify where in the proceedings the trial court precluded him from presenting testimony related to the truth-or-dare game. As noted, the trial court declined to rule on the truth-or-dare issue before trial. Moreover, in his argument on appeal, defendant provides no citation to the record to establish that he was prevented from asking a particular question about the truth-or-dare game or from otherwise presenting evidence regarding the specifics of the game.[1] By failing to explain and support his position, defendant has abandoned his claim. See *People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015).

Indeed, from the record, it appears that no one prevented defendant from presenting evidence; rather, defense counsel simply made a strategic decision not to ask questions about the specifics of the allegations against MH. For example, when Hargitt attempted to volunteer his hearsay-based understanding of what transpired during the truth-or-dare game, defense counsel prevented him from doing so, stating: "we won't get into that" and "I don't wanna talk about what the issue of truth or dare was about."[2] In other words, defense counsel chose not to pursue

---

[1] In his statement of facts, defendant details several prosecutorial objections to testimony during trial. However, the statement of facts is not the appropriate place for argument; and, to the extent defendant offers these facts in support of his claim, this information is improperly presented. See MCR 7.212(C)(6); MCR 7.212(C)(7). In any event, we have reviewed these objections, and these events do not support defendant's position. For example, defendant notes that the prosecutor objected when defense counsel asked a witness to speculate what MH's sister meant by calling MH an "ace in the hole." This speculative testimony about matters outside the witness's personal knowledge was properly excluded, MRE 602; and we fail to see how this relates to the truth-or-dare issue. In addition, during the prosecutor's questioning of a witness, the prosecutor interrupted when, in a nonresponsive answer, the witness attempted to discuss the truth-or-dare game. Given that the question was not posed by defense counsel, this did not interfere with defendant's efforts to present a defense. Finally, defendant notes that the prosecutor objected when MH's brother testified that he did not "believe that what is happening is truthful" and that he did not "feel that this whole situation is right." This opinion testimony regarding the credibility of MH's allegations was objectionable, *People v Musser,* 494 Mich 337, 349; 835 NW2d 319 (2013), and ultimately unrelated to the truth-or-dare issue. These proper objections did not deny defendant an opportunity to present a defense.

[2] Defendant speculates on appeal that there may have been an off-the-record ruling about the admissibility of testimony regarding details of the truth-or-dare game that prompted defense counsel not to ask questions about the game. But, these speculations are wholly unsubstantiated. In fact, when considering defendant's motion for a new trial, the trial court indicated that it did not recall making any such rulings off the record about this issue.

this issue, and defendant cannot now "assign error to something that his own counsel deemed proper." *People v Breeding*, 284 Mich App 471, 486; 772 NW2d 810 (2009).

Moreover, we note that, although the specifics of the allegations against MH were not made known at trial, the jury was in fact apprised of MH's motive to lie stemming from a truth-or-dare game and defendant's threats to report MH for some wrongdoing during the game. For example, MH testified that she once played truth-or-dare while babysitting, that she had heard defendant was going to report her to police because of the game, and that she was "upset" about this. In addition, Hargitt testified that he heard defendant fighting with MH's sister over a truth-or-dare game and that, during the argument, MH's sister told defendant that, if he reported the incident, he would never see his children again. MH's sister testified that CPS investigated allegations related to the game, but that nothing came from the investigation. Given defendant's opportunity to explore MH's motive to lie arising from the truth-or-dare game, there is no basis for defendant's claim that he was prevented from presenting his claimed defense. Cf. *People v Steele*, 283 Mich App 472, 489; 769 NW2d 256 (2009).

In relation to the truth-or-dare game, relying on *Morse*, 231 Mich App at 435, defendant also argues that, at a minimum, the trial court should have held an in-camera hearing to evaluate defendant's proffered evidence. In *Morse*, 231 Mich App at 435, this Court noted that in evaluating the admissibility of evidence of the complainant's prior sexual conduct, Michigan's rape-shield statute, MCL 750.520j(2), provides that the court may order an in camera hearing to resolve the issue. However, MCL 750.520j(2) also provides that a defendant seeking to introduce evidence of a complainant's sexual conduct must file "a written motion and offer of proof" regarding the proposed evidence. See also *Hackett*, 421 Mich at 350 ("The defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted."). Thus, to the extent defendant argues that he should have been allowed to present evidence of MH's sexual conduct during the truth-or-dare game, he failed to make an offer of proof to justify the introduction of this evidence or to necessitate an in-camera hearing. Defendant had no intention of calling the children involved in the game or anyone else who could speak to whether MH actually engaged in any relevant sexual conduct during the game, and MH denied any wrongdoing. In these circumstances, a hearing would amount to a mere fishing expedition, and there was no need for an in-camera hearing. Cf. *People v Williams*, 191 Mich App 269, 273; 477 NW2d 877 (1991). Indeed, ultimately, the import of defendant's evidence was that defendant had made allegations against MH and, even without a hearing regarding the substance of these allegations, defendant was not prevented from arguing that these allegations provided MH with a motive to lie. Thus, defendant was not deprived the opportunity to present a defense.

## II. JUDICIAL IMPARTIALITY

Defendant next argues that he was denied a fair trial when the trial judge threatened to gag him in front of the jury. This issue is not preserved because defendant failed to object during trial at a point when error, if any, could have been corrected. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). We review an unpreserved claim of judicial misconduct for plain error affecting a defendant's substantial rights. *People v Conley*, 270 Mich App 301, 305; 715 NW2d 377 (2006).

The United States and Michigan Constitutions both guarantee a defendant the right to a fair and impartial trial. See US Const, Am VI; Const 1963, art 1, § 20. A trial judge has wide discretion and power in matters of trial conduct. *Conley*, 270 Mich App at 307. However, the trial judge's power is not unlimited, and if the veil of judicial impartiality is pierced, a defendant's conviction must be reversed. *Id*. at 307-308. A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). In *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015), our Supreme Court recently clarified the proper analysis under which a claim of judicial misconduct is to be reviewed:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial.

"This inquiry requires a fact-specific analysis." *Id.* at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id.*

Relevant to the present case, the trial court's wide discretion and power in matters of trial conduct includes the discretion to gag an "unruly, disruptive, rude, and obstreperous" defendant if "repeated warnings have been ineffective." *Conley*, 270 Mich App at 309. However, because binding and gagging a defendant can affect the jury's feelings about a defendant, these procedures should be used as a last resort. *Id.* See also *Illinois v Allen*, 397 US 337, 343-344; 90 S Ct 1057; 25 L Ed 2d 353 (1970). Given a court's authority to gag a defendant, depending on the facts, this Court has held that a defendant is not denied a fair trial when the trial court threatens to gag a defendant in response to repeated interruptions from the defendant. *Conley*, 270 Mich App at 309-310.

Likewise, considering the totality of the circumstances in this case, we conclude that the trial court's warning that it would gag defendant if he was not quiet did not deprive him of a fair trial. The record shows that defendant interjected remarks during defense counsel's questioning of MH's sister. His remarks were loud enough to be heard by the court reporter, the prosecutor, and the trial court. We also note that during the hearing on defendant's motion for new trial, the trial judge explained that defendant's demeanor was disruptive, even before defendant's verbal remarks. In response to defendant's disruptive behavior, the trial court warned defendant of what actions it could properly take if defendant's behavior persisted. In particular, after defendant made several verbal remarks, in the jury's presence, the trial court said: "All right, listen to me. Keep your mouth shut, keep expressions off your face or I'm gonna have you

-5-

gagged by the sheriff." After this single warning, the trial apparently proceeded in an orderly fashion without any additional outbursts from defendant, and the trial court never actually followed through on its threat to gag defendant. Cf. *id.* at 309. At the end of trial, the trial court then instructed the jury that the court's comments were not evidence, that the court's comments were not intended to express an opinion by the court, and that if the jury believed the court had an opinion it "must pay no attention to that opinion." Jurors are presumed to follow their instructions, and these instructions alleviated any potential appearance of partiality resulting from the trial court's isolated warning to defendant. See *Stevens*, 498 Mich at 177-178, 190. Overall, considering the totality of the circumstances, the court's brief warning did not deprive defendant of a fair and impartial trial. Under these facts, defendant is unable to demonstrate plain error affecting his substantial rights. *Conley*, 270 Mich App at 305.

### III. MOTION FOR A NEW TRIAL

Finally, defendant argues that, because there is newly discovered evidence, the trial court abused its discretion by denying his motion for a new trial. In particular, defendant contends that a new trial is warranted based on the affidavit of his former girlfriend, Rachel Woods. MB and MH babysat for Woods's children in 2014 and 2015. In her affidavit, Wood described interactions she had with the victims before and after trial. In his own affidavit, defendant averred that he was unaware of Woods's association with MH and MB, meaning that he could not have discovered this information during trial. According to defendant, Woods's affidavit impeaches the victims' credibility and this new impeachment evidence merits a new trial.

We review for an abuse of discretion a trial court's decision on a motion for new trial. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). "For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted). "[N]ewly discovered impeachment evidence ordinarily will not justify the grant of a new trial." *People v Grissom*, 492 Mich 296, 317-318; 821 NW2d 50 (2012). However, in rare cases, the test set forth in *Cress* is satisfied by newly discovered impeachment evidence when "(1) there is an exculpatory connection on a material matter between a witness's testimony at trial and the new evidence and (2) a different result is probable on retrial." *Id.* at 319.

Having reviewed Woods's affidavit, we conclude that the trial court did not abuse its discretion by denying defendant's motion for new trial on the basis of newly discovered evidence. Briefly paraphrased, Woods would testify that:

> 1. A week before trial, MH cried and told Woods that she did not want to testify and was being forced to do so by her sister.

> 2. After returning from court, MH was sad about testifying and complainant MB was laughing. Further, even though MB told Woods that she was acting this way to cheer up MH, Woods believed that MB was happy because she likes being "the center of attention."

-6-

3. MB had a "very poor" reputation in the community for honesty, and she stole from Woods.

4. MH told Woods that she did not believe that MB was molested by defendant.

Considering these various allegations, even assuming that Woods's evidence was "newly discovered," that it could not have been discovered with reasonable diligence, and that it was not cumulative, it is plain that defendant has not satisfied the *Cress* test and this is not one of the rare cases in which impeachment evidence merits a new trial.

First, on its face, much of the evidence appears inadmissible because it consists of hearsay and/or improper opinion testimony on a witness's credibility. See MRE 801(c); MRE 802; *Musser*, 494 Mich at 349. Defendant largely fails to explain why this evidence would be admissible and, because it is inadmissible, it cannot make a different result on retrial probable. See *Grissom*, 492 Mich at 320-321; *id.* at 324 (KELLY, J., concurring).

Second, even assuming some of this evidence could be admitted for impeachment on retrial, defendant has not shown an exculpatory connection on a material matter and he has not shown a different result is probable on retrial. For example, MH's reluctance to testify in open court about sexual abuse and the notion that she was "forced" to come forward by her sister does not suggest that the testimony she gave was false or that a different result is probable, particularly when MH in fact testified at trial that her sister "pretty much" forced her to tell the police and that she thought testifying was "scary." Likewise, the victims' emotional reactions after trial—whether happy or sad—do not, without more, undermine the victims' veracity or suggest that defendant was wrongly convicted. In addition, MH's opinion of MB's allegations lacks all probative value, *Musser*, 494 Mich at 349, and would not make a different result probable. Lastly, evidence of MB's reputation for dishonesty and her theft from Woods, while arguably admissible under MRE 608(a) and (b), does not have a factual link with the heart of MB's trial testimony as required to demonstrate an exculpatory connection. See *Grissom*, 492 Mich at 315, 318, 321, citing *United States v Quiles*, 618 F3d 383, 392 (CA 3 2010). In other words, this evidence is general credibility evidence suggesting, at most, a tendency to lie about unspecified subjects outside of the courtroom and not the type of powerful, factually-related evidence that would suggest MB lied about the allegations of sexual abuse at trial. See *Grissom*, 492 Mich at 315-318, 321; *Quiles*, 618 F3d at 392-393; *White v Coplan*, 399 F3d 18, 24 (CA 1 2005). Indeed, given the vague details regarding the alleged theft and MB's purported reputation for dishonesty, we cannot see that this evidence would make a different result probable on retrial. On the whole, considering the "newly discovered" evidence identified by defendant in light of the evidence presented at trial, the trial court did not abuse its discretion by denying defendant's motion for a new trial.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray

-7-