# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMARQUIS KIANTE ROBINSON,

        Defendant-Appellant.

UNPUBLISHED
June 19, 2018

No. 333586
Saginaw Circuit Court
LC No. 15-041859-FC

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of two counts of armed robbery, MCL 750.529; one count of conspiracy to commit armed robbery, MCL 750.529; MCL 750.157a; one count of carrying a deadly weapon with unlawful intent, MCL 750.226; two counts of unlawful imprisonment, MCL 750.349b; and six counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to prison terms of 10 to 20 years for the armed-robbery and conspiracy convictions; two to five years for the conviction of carrying a deadly weapon; 10 to 15 years for the unlawful-imprisonment convictions, and consecutive two-year terms for the felony-firearm convictions. Defendant appeals as of right. We affirm defendant's convictions and remand for resentencing.

## I. FACTS

On October 4, 2015, at around 2:00 a.m., Harjit and Simranjit Singh were preparing to close a Stop and Shop convenience store when Harjit, while locking the doors, saw defendant and Michael Campbell[1] running toward him. They held Harjit at gunpoint and began looking through his pockets, telling him to give them money or they would kill him. Defendant and Campbell proceeded to enter the store, taking money and personal property from Harjit and Simranjit and about $3,500 cash from the store's back office.

---

[1] Defendant was tried jointly with Campbell, who was also convicted.

-1-

Harjit testified that the robbers were both wearing hooded sweatshirts, one black and the other gray. Harjit identified defendant as the one wearing black, and testified that he was able to recognize defendant and Campbell because, before the robbery, they were regular customers who came into the store almost every day. Harjit would hear them speaking when they came in the store. He testified that he recognized Campbell, in part, by his voice. A portion of the store's surveillance footage was played for the jury. While the video was being played, Harjit testified that defendant was wearing Nike shoes with red shoe laces. The preliminary-examination testimony of Simranjit, in which he identified defendant as a perpetrator, was read for the jury.

Several responding officers testified at trial. Officer Jonathon Beyerlein recounted his dispatch notes that reported two suspects wearing black and gray, heading west of the Stop and Shop. Beyerlein encountered "two subjects" wearing black and gray running near the location of the robbery, and recounted his pursuit and ultimate arrest of defendant and Campbell. Beyerlein explained that defendant was dressed in black and was wearing black and white Nike shoes with red shoe laces when he was arrested. Officer Steven Lautner testified that "a small black revolver fell from [defendant's] waistband" while the officers were performing the arrest. The revolver was loaded. "[A] large pile of money" was recovered in a grassy, weeded area near the location where the officers seized Campbell. Officers also recovered a brown paper bag full of coins, paper bills, and receipts that were printed with the address of the Stop and Shop.

Officer Anthony Teneyuque viewed the store's surveillance footage before he saw the suspects. While the footage was being played in court, he explained that he "took note of the shoes" when he first viewed the footage; he stated, "you could also tell that there were actually red shoe laces which was very distinctive . . . ." Teneyuque went to the location "where the other officers had detained two subjects" after viewing the footage. He explained:

> At that point I obviously wanted to take a look at the subjects that were detained to possibly exclude them from being a part of the situation. Upon observing both of the subjects, looking at their clothing, it was almost a 100 percent match. To be quite honest I was going to say a 100 percent match . . . because of not only the color palette of the clothing, the different shoe laces, the fact that these two subjects that were detained were in the same vicinity where they were apprehended. We just had an overwhelming probable cause to believe these subjects were involved.

Teneyuque took photographs of the suspects. When one of the photographs of defendant was admitted into evidence, Teneyuque testified:

> This subject appears to match the subject who was actually in the store in the counter side. Not only obviously the hoodie is no longer on his head, but the same color hoodie is hanging over his shoulders. The black shirt area as well as the cloth, the gray cloth pants. And more importantly, the black sneakers there that have the obviously red shoe laces on them.

Michigan State Police Detective Denny Montgomery interviewed Campbell, who admitted to committing the robbery. The audiorecording of the interview was admitted into

-2-

evidence and played for the jury.[2] Campbell's testimony from the preliminary examination, which incriminated both defendants, was admitted by stipulation into evidence.

## II. ANALYSIS

## A. SCORING OF OFFENSE VARIABLES

Defendant argues that the trial court erroneously scored Offense Variables (OVs) 4 and 13. We conclude that the trial correctly scored the latter, but erroneously scored OV 4.

Defendant raised these issues in a motion to correct an invalid sentence, which the trial court denied. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

Courts are not bound by the legislative sentencing guidelines, because they are only advisory. *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015). A sentencing court may depart from the sentencing guidelines range without stating substantial and compelling reasons to justify the departure, and the court's sentence will be reviewed for reasonableness. *Id*. at 392. The court must articulate on the record its reasons for imposing its sentence; the articulation is adequate if the court expressly relies on the guidelines or if it is clear from the context of the court's remarks that the court relied on them. *People v Conley*, 270 Mich App 301, 312-313; 715 NW2d 377 (2006). "[I]f a minimum sentence falls within the appropriate guidelines range, a defendant is not entitled to be resentenced unless there has been a scoring error or inaccurate information has been relied upon." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006).

## 1. OV 13

The trial court assessed 25 points for OV 13 pursuant to MCL 777.43(1)(c), which provides that 25 points should be assigned when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" A trial court may consider "multiple concurrent offenses arising from the same incident" in assigning points under MCL 777.43(1)(c). *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013). With the two victims and the robbery and unlawful imprisonment, at least three *separate acts* occurred that were allowed to be scored under MCL 777.43(1)(c). Defendant was a participant in robbing each victim and in restraining their movements. As such, this case is distinguishable from *People v Carll*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336272); slip op at

---

[2] This audiorecording, while provided as an appendix to defendant's brief on appeal, is not contained in the lower-court record. Nevertheless, it is not in dispute that Campbell implicated defendant in the recording.

8, wherein the Court concluded that reckless driving, even though it involved multiple victims, was a single act and did not support a 25-point score for OV 13.

### 2. OV 4

With respect to OV 4, the trial court assigned 10 points pursuant to MCL 777.34(1)(a) for a victim's "[s]erious psychological injury requiring professional treatment[.]" The statute provides: "Score 10 points if the serious psychological injury *may* require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2) (emphasis supplied). A trial court may not assess points for OV 4 "solely on the basis . . . that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim," nor is "evidence of fear while a crime is being committed, by itself," sufficient to assess points for OV 4. *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017) (emphasis omitted).[3]

Here, Simranjit testified that he and Harjit were in fear during the robbery. The record does not otherwise reveal any evidence to suggest that either victim suffered serious psychological injury requiring professional treatment. Because "evidence of fear while a crime is being committed, by itself, is insufficient to assess points for OV 4," *White*, 501 Mich at 162 (emphasis omitted), the trial court erroneously[4] assessed 10 points for OV 4. Had the trial court assessed zero points for OV 4, defendant's minimum guideline range would have decreased from 108 to 180 months to 81 to 135 months. MCL 777.62. Although the guidelines are merely advisory, *Lockridge*, 498 Mich at 399, defendant was entitled to be sentenced based on accurate information, *Francisco*, 474 Mich at 89-90. Accordingly, defendant is entitled to resentencing. *People v McChester*, 310 Mich App 354, 359-360; 873 NW2d 646 (2015).

### B. ADMISSION OF EVIDENCE

Defendant argues that the trial court erroneously admitted Officer Teneyuque's testimony about the video-surveillance footage because it was an improper narrative and usurped the fact-finding role of the jury, depriving defendant of his right to a fair trial. Defendant also argues that the trial court erroneously admitted Campbell's statement to Detective Montgomery[5] because the

---

[3] The Supreme Court in *White* overruled *People v Apgar*, 264 Mich App 321; 690 NW2d 312 (2004), "to the extent it held that a victim's fear during a crime, *by itself and without any other showing of psychological harm*, is sufficient to assess 10 points for OV 4." *White*, 501 Mich at 164.

[4] We note that the trial court did not have the benefit of *White* at the time of sentencing.

[5] Defendant objects to the audiorecording relaying this statement and appears to also be objecting to Montgomery's clarification at trial that the reference to "June" in the recording was a reference to defendant.

statement was not an admissible prior consistent[6] statement under MRE 801(d)(1). We conclude that Teneyuque's testimony was admissible evidence, and that although Campbell's statement was inadmissible hearsay, its admission did not prejudice defendant.

Defendant did not object to Teneyuque's testimony or the admission of Campbell's statement, either on evidentiary or on constitutional grounds, and therefore failed to preserve these issues. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Although the Court disfavors consideration of unpreserved claims of error, plain errors may be noticed in spite of having not been brought to the attention of the court. *People v Carines*, 460 Mich 750, 761-763; 597 NW2d 130 (1999). Forfeiture under the plain-error rule may be avoided if: (1) error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. The defendant bears the burden of persuasion with respect to prejudice. *Id*. If a defendant satisfies the enumerated requirements, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, citation, and brackets omitted).

## 1. OFFICER TENEYUQUE'S TESTIMONY

Regarding Officer Teneyuque's video-surveillance testimony, under MRE 601, "[u]nless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules." MRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Teneyuque's testimony detailed the process of Teneyuque's investigation and illustrated how he identified the initial suspects in the surveillance video as the same persons who were subsequently arrested. He testified that upon viewing the surveillance footage, he took note of the subjects' clothing and specifically "took note of the shoes," because he observed distinctive, red shoe laces. Teneyuque went on to explain that after the suspects were placed in custody, he sought to determine whether they were the perpetrators whom he had observed in the surveillance footage. Specifically, he testified that "[u]pon observing both of the subjects, looking at their clothing, it was almost a 100 percent match." He explained his basis for this conclusion by noting the color palette of their clothing, defendant's shoelaces, and the proximity

---

[6] Campbell did not testify at trial but his preliminary-examination testimony was read into the record. Defendant's argument is that Campbell's statement to the police could not have been admitted as a statement consistent with this preliminary-examination testimony.

of their point of apprehension to the Stop and Shop. Teneyuque did not "narrate" the surveillance video or explicitly identify the person in the video as defendant; he merely explained how he used the video to match the clothing of the persons in the video to the persons who had been apprehended. To the extent that some of Teneyuque's testimony may have been improper in that he referred to "a photograph of Mr. Robinson" that he took at the place of the suspects' arrest, see *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (emphasizing, with approval, that the police officer in that case "did not identify [the] defendant in the video or still images"), we nevertheless find no basis for reversal given the substantial other testimony and evidence demonstrating that defendant was the person in the video.

## 2. CAMPBELL'S STATEMENT

Regarding Campbell's statement, hearsay is generally defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," MRE 801(c), and is inadmissible unless an exception applies, MRE 802. Under MRE 801(d)(1), a witness's prior statement is not hearsay, and therefore admissible, if:

> The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person[.]

Campbell's statement to the police (and Officer Montgomery's clarification that the name "June" in the statement was a reference to defendant) was not admissible under MRE 801(d)(1)(B). Although Campbell testified at the preliminary examination and was subject to cross-examination, a prior consistent statement must be offered to "rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive," MRE 801(d)(1)(B), and there is no indication in the record that the statement was offered for such a purpose. However, although the statement was inadmissible hearsay, defendant was not prejudiced by its admission because it did not affect the outcome of his trial. Most significantly, had the jury never been exposed to Campbell's statement to the police, it would have nonetheless been exposed to Campbell's preliminary-examination testimony in which he clearly and unambiguously implicated defendant.[7] In addition, the jury had the testimony of the victims, and

---

[7] In the context of this issue, defendant does not argue against the admission of the preliminary-examination testimony, which was admitted at trial by stipulation. His appellate brief makes clear that he is focusing instead on Campbell's statement to the police. For example, he states that "it is not clear that Mr. Campbell's statement to police took place before he had the motivation to fabricate and thus, his statement would not meet the requirement that prior consistent statements occur before the declarant had a reason to lie." In addition, the entire basis of defendant's argument is that the admission of the evidence "bolstered" Campbell's testimony.

the exhibits that revealed defendant committing the crimes while wearing the distinctive clothing that he was wearing while arrested. We find no error requiring reversal.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his trial counsel, Matthew Frey, provided ineffective assistance of counsel, and that even if the alleged deficient acts do not warrant reversal individually, the cumulative effect of the errors requires reversal. We disagree.

Defendant preserved these claims by raising them in his motion for a new trial. See *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). A claim of ineffective assistance of counsel involves a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The Court "must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). A trial court's finding of fact is clearly erroneous "if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review defendant's claim of cumulative error "to determine if the combination of alleged errors denied defendant a fair trial." *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001).

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*Armstrong*, 490 Mich at 289-290 (citations omitted).]

Counsel is not required to argue frivolous or meritless motions, and the failure to do so does not amount to ineffective assistance of counsel. *People v Gist*, 188 Mich App 610, 613; 470 NW2d 475 (1991).

### 1. FAILURE TO OBJECT TO OFFICER TENEYUQUE'S TESTIMONY

Frey testified at the evidentiary hearing regarding defendant's ineffective-assistance claim that he normally objects "when anyone attempts to narrate a video," but did not object during Teneyuque's testimony because he tends to be overruled "in this county" every time he

---

Given that Campbell did not testify at trial, defendant is clearly referring to the alleged fact that the statement to the police "bolstered" the preliminary-examination testimony that was read into the record.

makes such an objection and because he did not "recall the officer necessarily narrating the video . . . my recollection was that he was pointing things out in the video, in terms of how he made the identification." Frey stated, "I don't believe it was a narration as to here's how the robbery occurred." Frey was correct in stating that Teneyuque did not "narrat[e] the video." In addition, as we noted earlier, to the extent that some of Teneyuque's testimony may have been improper in that he referred to "a photograph of Mr. Robinson" that he took at the place of the suspects' arrest, this testimony did not affect the outcome of the case in light of the substantial other testimony and evidence demonstrating that defendant was the person in the video. Accordingly, defendant has not established ineffective assistance of counsel with regard to the failure to object. *Armstrong*, 490 Mich at 290.

## 2. FAILURE TO OBJECT TO CAMPBELL'S STATEMENT

As noted earlier, the statement was inadmissible hearsay, but defendant was not prejudiced by its admission because it did not affect the outcome of his trial, especially in light of Campbell's preliminary-examination testimony in which he clearly and unambiguously implicated defendant. As such, defendant has not established ineffective assistance of counsel with regard to the failure to object.[8]

## 3. CROSS-EXAMINATION OF HARJI AND SAMRANJIT

Defendant argues that Frey's failure to impeach Harjit and Simranjit "with their prior descriptions of the assailant" amounted to ineffective assistance of counsel. He asserts that Harjit's and Simranjit's knowledge of the assailants "continued to grow and grow as they learned more and more information about the suspects the police had in custody," and contends that Frey should have impeached them by addressing their prior statements to police.

---

[8] In his supplemental appellate brief, defendant states that Frey stipulated to the admission of the statement. The record reflects a stipulation regarding Campbell's preliminary-examination testimony but a "failure to object" with regard to the statement to police. At any rate, our analysis remains the same in either situation. We note that defendant's supplemental brief regarding this issue is not a model of clarity. At certain points he seems to be attempting to expand upon the argument in his initial appellate brief, wherein he focused on Campbell's statement to the police, by possibly arguing that counsel erred in stipulating to the admission of the preliminary-examination testimony. However, he labels his appellate issue as follows: "Trial counsel was ineffective for stipulating to the admission of Mr. Campbell's prior consistent statement, which implicated Mr. Robinson." It is not clear how the preliminary-examination testimony would be a "prior consistent statement," when Campbell did not testify at trial. If defendant *is* somehow attempting to argue that counsel should not have stipulated to the admission of the preliminary-examination testimony, his argument is inadequate to present this issue for appellate review. As noted in *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009), an appellant may not "leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." (Quotation marks and citation omitted.)

When this matter was addressed at the evidentiary hearing, Frey explained that he elected to cross-examine Harjit and Simranjit about their levels of interaction with African American males in order to discredit their identification of defendant. During Frey's cross-examination of Harjit at trial, he inquired into Harjit's past experience interacting with African American males, and Harjit indicated that he had only recently moved to the United States and had not had a lot of contact with them. Additionally, Frey inquired into Harjit's ability to observe the physical features of the perpetrators during the robbery, and Harjit indicated that the men were covered "from their nose down." With respect to Simranjit, Frey made a similar inquiry during cross-examination at the preliminary examination, eliciting that defendant's face had been "covered." Defendant contends that further cross-examination was necessary because Harjit and Simranjit failed to include various details in their initial reports to police.

However, Harjit and Simranjit transmitted at least some substantial information when they first contacted police. Beyerlein's dispatch notes indicated that the two suspects were wearing black and gray, and were heading west of the Stop and Shop, and his pursuit verified this information when he encountered "two subjects running north, northwest," wearing black and gray. The fact that Harjit and Simranjit failed to initially give police a full-scale description of what they observed in the immediate wake of being robbed at gunpoint does not necessarily support an assertion that their subsequent, more specific testimony was not credible, especially in light of the considerable amount of consistent evidence that was admitted at trial implicating defendant's identity. Moreover, as explained below, counsel eventually (and reasonably) elected to change strategies, and thus the cross-examination about identification did not reasonably affect the outcome of the case. *Armstrong*, 490 Mich at 290.

### 4. CLOSING ARGUMENT

Defendant argues that he received ineffective assistance of counsel when, during his closing argument, Frey stated, "I'm not going to argue identification. I think as the prosecutor said, it's been proven 200 percent to you, that the people in the video are the people that are here with us."

At the evidentiary hearing, Frey testified that he conceded defendant's identity in the surveillance video pursuant to an evolved theory of the case that the robbery was an "inside job" involving the participation of the alleged victims. According to Frey, throughout the trial "it became very apparent," based the evidence admitted and "the looks [the jurors] were giving and their body language," that defendant's identity was the "furthest issue from [any juror's] mind . . . ." Frey sought to "take the facts and portray them in a way as to give . . . perhaps an alternate view or theory of the case." Frey supported his conduct by citing his experience in trial work; he believed "that identification was not going to be a realistic issue for the jurors," and that consequently, his alternate "inside job" theory would be more effective. He stated that if he was "going to hang [his] hat on" identification, he "might as well have conceded absolute guilt."

Frey was faced with overwhelming evidence, including video evidence, that defendant was a participant in the events at the Stop and Shop that day. Accordingly, he attempted to find a way to "explain" defendant's participation. In closing arguments at trial he emphasized that there had been no getaway car; that Simranjit seemed to be "looking for someone" on the video, right before defendant and Campbell appeared; that a substantial amount of money had for some

reason not been in a safe; that the victims seemed to rush things after entering a code to call the police, instead of "stalling" a bit to let the police arrive; and that Simranjit appeared to be "acting" for the camera when emptying his pockets.

Given the evidence he faced, Frey made a reasonable strategic decision to try to plant a seed of doubt in the minds of the jurors. Frey's strategy was "sound trial strategy under the circumstances," *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000), and the fact that it failed does not mean that Frey provided ineffective assistance of counsel, *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996).[9]

### 5. FAILURE TO OBJECT TO THE SCORING OF OVs 4 AND 13

Because we are remanding this case for resentencing based on the scoring of OV 4, we need not address defendant's argument that counsel provided ineffective assistance in connection with the scoring of this OV. Moreover, an objection to the scoring of OV 13 would have been meritless, and counsel is not required to make a meritless objection. See *Gist*, 188 Mich App at 613.

### 6. CUMULATIVE ERROR

"The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *Knapp*, 244 Mich App at 388. "In order to reverse on the grounds of cumulative error, the errors at issue must be of consequence," i.e., "the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Id*. Defendant argues that "reversal is necessary because the cumulative effect of the inadmissible evidence, primarily an improper identification by a police officer, failure to impeach the eyewitness identification, and admission of guilt by his attorney," amounted to the deprivation of a fair trial. Moreover, defendant asserts that his "entire trial was corrupted by a defense attorney who utterly failed to challenge the prosecution's proofs."

As discussed, defendant did not receive ineffective assistance of counsel. Moreover, the cumulative effect of the alleged errors did not amount to the deprivation of a fair trial because Frey pursued what appears to have been one of the only viable avenues—if not the only viable avenue—of defense. Considering the amount of evidence presented against defendant, Frey acted reasonably in electing to not attempt to argue the issue of identity to the jury.

---

[9] In addition, Frey testified that he pursued the strategy "after discussing it with the client." The trial court, in its order following the evidentiary hearing, stated that the "evidence for the prosecution was very strong. It is very unlikely any other defense would have changed the outcome of the trial."

We affirm defendant's convictions and remand for resentencing. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello