*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 22, 2020

Plaintiff-Appellee/Cross-Appellant,

v

No. 348118
Wayne Circuit Court
LC No. 17-005522-01-FC

KARLTON JAMES WRIGHT,

Defendant-Appellant/Cross-Appellee.

Before: SWARTZLE, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of voluntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to a term of 19 months to 15 years in prison for the manslaughter conviction, and a consecutive two-year term in prison for the felony-firearm conviction. Plaintiff cross-appeals, challenging the trial court's refusal to score offense variable (OV) 5 of the sentencing guidelines. We affirm defendant's convictions, but vacate the sentence imposed for defendant's manslaughter conviction and remand for resentencing on that conviction.

## I. BACKGROUND

Defendant's convictions arose from the shooting death of his son, Eric Hatchett, inside defendant's auto-repair shop. The prosecutor presented evidence that Hatchett and another employee left the shop and defendant arrived to find it left open and empty. Defendant waited behind the counter for the men to return. When Hatchett and the other employee returned, defendant and Hatchett got into an argument. Hatchett struck defendant in his face, and defendant reacted by pulling out a gun and shooting Hatchett three times in the back as Hatchett tried to run away. The shooting was captured on the business's surveillance cameras, and the video was played at trial.

The prosecutor's theory of the case was that defendant intended to kill Hatchett when he fired the gun, and that there was no justification for his act of shooting Hatchett in the back. The defense theory was that defendant did not intend to harm Hatchett and that he had acted in lawful self-defense. To support this claim, defendant testified that immediately before the shooting,

Hatchett told him to "shut the f*ck up," hit him in the face with enough force to knock off defendant's glasses, and told defendant that he was "gonna die in here today." Defendant claimed that he was terrified because he knew of Hatchett's past violent behaviors, and argued that he pulled his gun and shot Hatchett because he thought Hatchett was going to kill him.

The prosecutor charged defendant with second-degree murder, MCL 750.317, and felony-firearm. Over defendant's objection, the trial court granted the prosecutor's request to instruct the jury regarding the lesser offense of voluntary manslaughter. The trial court denied defendant's request to instruct the jury regarding involuntary manslaughter. The trial court did, however, instruct the jury regarding self-defense. After deliberating as instructed, the jury found defendant guilty of voluntary manslaughter and felony-firearm.

## II. ANALYSIS

### A. DEFENDANT'S APPEAL

### 1. JURY INSTRUCTIONS – VOLUNTARY MANSLAUGHTER

Defendant first argues that the trial court erred by instructing the jury on voluntary manslaughter. Although we generally review claims of instructional error de novo, we review for an abuse of discretion a trial court's decision whether a jury instruction is applicable to the facts of the case. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).

Both voluntary and involuntary manslaughter are lesser-included offenses of murder, distinguished by the element of malice. *People v Mendoza*, 468 Mich 527, 533-534, 540-541; 664 NW2d 685 (2003).[1] When "a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *Id*. at 541. With respect to voluntary manslaughter, the evidence must show "that (1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009).

Defendant argues here that there was insufficient evidence of provocation to support a voluntary manslaughter instruction. To mitigate a killing from murder to voluntary manslaughter, the necessary degree of provocation required "is that which causes the defendant to act out of passion rather than reason; that is, adequate provocation is that which would cause the reasonable

---

[1] Statutory involuntary manslaughter is not a lesser offense of second-degree murder. *People v Smith*, 478 Mich 64, 71; 731 NW2d 411 (2007). The record and the parties' briefs indicate, however, that defendant requested an instruction on common-law involuntary manslaughter, which is "an inferior offense of murder," and an instruction on this offense is warranted "when a rational view of the evidence would support it." *Mendoza*, 468 Mich at 548.

person to lose control." *Id*. (cleaned up). "[P]rovocation is that circumstance that negates the presence of malice." *Mendoza*, 468 Mich at 536.

At trial, there was evidence that as defendant was attempting to speak after Hatchett returned to the auto-repair shop, Hatchett approached defendant and told him to "shut the f**k up." The two men had a conversation that escalated quickly and became loud. The argument led to Hatchett striking defendant in the face with enough force to knock defendant's glasses from his face. Hatchett stepped toward defendant after telling him: "You gonna die in here today, old man." Defendant then shot Hatchett, mere seconds after Hatchett struck him in the face. A rational view of this evidence supported a finding that defendant was provoked by Hatchett's act of striking defendant in the face, which caused defendant to react by discharging his firearm at Hatchett in the heat of passion. The trial court's decision to instruct the jury on voluntary manslaughter did not fall outside the range of reasonable and principled outcomes.

## 2. JURY INSTRUCTIONS – INVOLUNTARY MANSLAUGHTER

Next, defendant argues that the trial court erred by denying his request for an instruction on the lesser offense of involuntary manslaughter. A trial court's failure to give a requested instruction warrants reversal "only where the offense was clearly supported by the evidence; an offense is clearly supported where there is substantial evidence to support it." *People v McMullan,* 488 Mich 922; 789 NW2d 857 (2010).

To the extent that the trial court suggested that common-law involuntary manslaughter is not a lesser included offense of murder, that is incorrect. As indicated previously, involuntary manslaughter is a lesser included offense of murder, distinguished by the element of malice. *Mendoza*, 468 Mich at 533-534. The trial court's incorrect suggestion, however, does not entitle defendant to a new trial. Before making the statements on which defendant relies, the trial court stated: "First of all, the facts don't really support" the instruction, and we agree.

Defendant would have been entitled to an involuntary manslaughter instruction if a rational view of the evidence would have supported a finding that Hatchett's death was caused by an act of gross negligence or an intent to injure, rather than malice. See *People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004). Defendant argues that he satisfied this requirement because "he didn't mean to hurt that man, and that the gun fired after he was struck by the decedent, which resulted in his glasses being knocked off his face." There was no evidence, however, to support this theory. That is, there was no evidence that "the gun fired," i.e., that it accidentally discharged. The video evidence indicates that defendant deliberately discharged the firearm after Hatchett struck him in the face, and defendant's own testimony indicated that he did so intentionally because, according to defendant, he thought Hatchett was going to kill him. No rational juror could conclude that defendant's conduct of intentionally shooting his firearm at Hatchett, who was running away, could be characterized as only an act of gross negligence, committed without malice. Consequently, defendant was not entitled to an instruction on involuntary manslaughter.

## 3. PROSECUTOR'S CONDUCT

Defendant argues that the prosecutor erred by arguing at trial that there was evidence of adequate provocation to support voluntary manslaughter, but then argued at sentencing that there

was not adequate provocation to support manslaughter. Because defendant did not object to the challenged arguments in the trial court, this issue is unpreserved. We review unpreserved claims for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

The record does not support defendant's claim that the prosecutor impermissibly employed inherently inconsistent theories. The prosecutor charged defendant with second-degree murder, and the trial court granted the prosecutor's request to instruct the jury on the lesser offense of voluntary manslaughter. Throughout trial, the prosecutor sought a conviction of second-degree murder. In closing argument, the prosecutor argued that each element of second-degree murder was proven beyond a reasonable doubt. The prosecutor also discussed the elements of the lesser offense of voluntary manslaughter, stating that the jury will "be able to consider [this offense] if you don't believe he committed second degree murder, which I think is what the facts in evidence show." Defendant offers no citation to applicable caselaw to support his contention that it was improper for the prosecutor to argue that the evidence supported the charged offense of second-degree murder, but if the jury concluded that adequate provocation existed to sustain the lesser offense of voluntary manslaughter, defendant could be convicted of that offense instead. The prosecutor obviously understood that it was the jury's province to resolve disputed issues of fact and, aware of that, could permissibly argue alternative views of the evidence that the jury might accept.

Defendant makes much of the prosecutor stating at sentencing that he did "not believe that there was adequate provocation in this case given by that video." That statement was made in the limited context of requesting that the trial court rescore OV 6, which considers the offender's intent to kill or injure another person, MCL 777.36(1). The prosecutor argued that defendant's intent was consistent with second-degree murder, rather than voluntary manslaughter, an argument the trial court correctly rejected in deference to the jury's verdict. MCL 777.36(2)(a); see also *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019).

Moreover, defendant does not explain how an argument regarding an offense variable made before the trial court at sentencing could have affected the jury's verdict at trial, even if that argument could be described as inconsistent. Accordingly, we reject this claim.

## 4. JUDICIAL MISCONDUCT

In his last claim, defendant argues that the trial court pierced the veil of impartiality when, instead of simply ruling on the prosecutor's objections to defense counsel's closing arguments, the trial court "took it upon himself to extensively chastise defense counsel," thereby calling defense counsel's character into question and demonstrating juridical bias in favor of the prosecutor. "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial misconduct. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). In determining whether a trial judge's conduct deprives a defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at

164, 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is a fact-specific inquiry, and this Court considers the "cumulative effect" of any errors. *Id*. at 171-172. A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is "so egregious that it pierces the veil of impartiality." *Id*. at 171.

As previously noted, defendant takes exception to the trial court's commentary when issuing its rulings on the prosecutor's objections during defense counsel's closing argument. Defendant argues that the trial court bolstered the prosecutor's case and called defense counsel's character into question. Considering the totality of the circumstances, the trial court's comments here, which included rulings that certain arguments were "improper," and telling defense counsel to "shift gears" and to "get away from the personal comments," were not calculated to cause the jury to believe that the trial court had any opinion regarding the case, and were unlikely to have unduly influenced the jury to the detriment of defendant.

The comments do not reveal deep-seated favoritism or antagonism. Rather, the trial court's comments were made in the context of addressing defense counsel's repeated attempts to make improper arguments, and the trial court was merely explaining its ruling, urging defense counsel to move on, and not intending to bolster the prosecutor's case or discredit defense counsel. The trial court appropriately exercised its discretion to control the trial to prevent improper arguments and to move the trial along. It is well established that the trial court has a duty to control trial proceedings in the courtroom, and it has wide discretion in fulfilling that duty. *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). Defendant has not shown that the trial court's conduct was improper.

Further, the trial court explained to the jury that the court had a responsibility to ensure that the trial was run efficiently and fairly. The trial court instructed the jury that the case must be decided on only the evidence, that its comments and rulings were not evidence, that it was not trying to influence the vote or express a personal opinion about the case when it makes a comment or a ruling, and that if the jury believed that the court has an opinion, that opinion must be disregarded. "Because [i]t is well established that jurors are presumed to follow their instructions, the presence of a curative instruction does tend to cut against a finding of judicial bias." *Stevens*, 498 Mich at 190 (cleaned up). The trial court's instructions were sufficient to cure any perceived error. *Id*.

## B. THE PROSECUTOR'S CROSS-APPEAL

On cross-appeal, the prosecutor argues that the trial court clearly erred when it found that there was no evidence to support a 15-point score for OV 5. When reviewing a trial court's scoring decision, its "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

"OV 5 is scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family." *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017). A score of 15 points is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). "In this context, serious is defined as having important or dangerous possible consequences." *Calloway*, 500 Mich at 186 (cleaned up). In scoring OV 5, a trial court should consider "the severity of the injury and the consequences that flow from it, including how the injury has manifested itself before sentencing and is likely to do so in the future, and whether professional treatment has been sought or received." *Id*.

At sentencing, both Hatchett's mother and sister made victim-impact statements, expressing their grief and despair at the loss of Hatchett. Hatchett's mother specifically stated that as a result of Hatchett's death, both she and his sister "have been going to grievance counseling." Hatchett's sister discussed talking about Hatchett's death in therapy, not being able to "get [her] brother being dead on a gurney out of [her] head," being prescribed medication because she was unable to sleep, being off work for eight months, and being unable to parent her children. The nature and descriptions of the psychological effects of Hatchett's death on his family members, which were expressed on the record, established clearly that Hatchett's family members had suffered serious psychological injuries requiring professional treatment. We conclude that the trial court clearly erred by finding that the evidence was merely "generic" and did not support a 15-point score for OV 5.

This scoring error requires resentencing because the trial court sentenced defendant using an inaccurate minimum-sentence range as a result of the error in scoring OV 5. The trial court scored the guidelines for defendant's conviction of voluntary manslaughter, which is a class C offense. MCL 777.16p. Defendant's total OV score of 65 points and zero prior-record-variable points placed him in the V-A cell of the Class C sentencing grid, for which the minimum sentence range is 19 to 38 months. MCL 777.64. The additional 15 points for OV 5 increased defendant's total OV score from 65 points to 80 points, which placed him in OV Level VI (75+ points) instead of OV Level V (50-74 points), resulting in a higher guidelines range. The guidelines range for the VI-A cell is 29 to 57 months. MCL 777.64. Because this scoring error affects the guidelines range under which defendant was sentenced, defendant's sentence was based on inaccurate information and resentencing is required. See *People v Francisco*, 474 Mich 82, 88-90, 92; 711 NW2d 44 (2006).

We affirm defendant's convictions, but vacate defendant's sentence for manslaughter and remand for resentencing consistent with this opinion.[2]  We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher

---

[2] We note that the judgment of sentence indicates that defendant was convicted of manslaughter under MCL 750.329, but he was convicted of voluntary manslaughter under MCL 750.321, as a lesser offense of murder. We are alerting the parties and the trial court to this detail so that it may be corrected on resentencing.