*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
December 21, 2023

v

No. 363916
Jackson Circuit Court
LC No. 20-001609-FC

CHRISTOPHER LEWIS KING,

        Defendant-Appellant.

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant, Christopher King, was convicted of assault with intent to murder, MCL 750.83; carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and carrying a concealed weapon (CCW), MCL 750.227. He appeals by delayed leave granted,[1] arguing that his minimum sentence of 20 years' imprisonment for the assault with intent to murder conviction is unreasonable and improper. For the reasons set forth in this opinion, we vacate King's sentence on the assault with intent to murder conviction and remand for resentencing.

## I. BASIC FACTS

On March 28, 2020, at approximately 10:00 p.m., King pulled beside a vehicle driven by Ty Marshall. He displayed a handgun and Marshall quickly backed his vehicle up and sped away from the area. King pursued him at a high rate of speed, firing his gun. Several bullets struck Marshall's vehicle. Marshall called 9-1-1 and continued to flee. At times, King was so close to Marshall's vehicle that Marshall could not see the headlights of King's vehicle. Eventually, Marshall arrived at his house, parked beside the garage, and entered the house through the garage. King pulled into the driveway, bumping into Marshall's vehicle and began shooting with an assault rifle. He fired at least five shots in the direction of the house and garage. He damaged the garage,

---

[1] *People v King*, unpublished order of the Court of Appeals, entered May 8, 2023 (Docket No. 363916).

but not the house. Marshall was able to retrieve a shotgun from a gun safe, and he returned fire. King then left the area. He was apprehended by law enforcement within one hour of the start of the incident. At that time, he was given a preliminary breath test, which indicated that his blood alcohol content was 0.197. King did not testify at trial because he did not have a clear memory of the incident. The jury found that he was guilty of assault with intent to murder, felony-firearm, and CCW.

At sentencing, King's lawyer asked for a "within the guidelines" sentence, noting that King had not testified at trial because he had no memory of what had occurred. The trial court asked if there was anything that King wanted to tell the court. The following exchange then occurred:

> *The Defendant.* Yes. I am sorry for everything that happened and (inaudible) we got here.

> *The Court.* Well why, why, why don't you start by telling me one of the big mysteries in the trial. Why, why, why were you chasing this guy down with a gun. I mean he, he apparently—the two of you knew each other. So you know I guess me and the jury, the only thing we could figure out through the whole thing is it was some kind of drug deal that went awry. Am, am, am I, am I wrong about that?

> *The Defendant.* No, Your Honor.

> *The Court.* Okay. So what, what were you, what were you driving down such that you had an AR-15 and a pistol and you were intent on shooting both at this guy quite a few times? I mean what was going on? In sleepy Hanover Horton.

> *The Defendant.* I don't remember Your Honor.

> *The Court.* You don't remember. So you, you, you, you—I mean, I mean roll up an AR-15, you've got to put the clip in there and slide the bolt back, turn the safety lever off. You, you've got a semiautomatic. You've got to, you've got to do the, you've got to slip a clip in there. You've got to rack one in there, turn the safety off. And then you're driving at a high rate of speed. You're shooting out of the vehicle. I, I mean that, that requires a certain presence of mind. I'm, I'm just not understanding how you can't remember anything.

> *The Defendant.* I don't either Your Honor. So . . .

> *The Court.* I, I just don't think you want to tell me anything.

> \* \* \*

> *The Court.* Well you know, it, it, it's nice . . . that your mom writes you a really nice letter but, you know, you are taking zero accountability for what you did. And you know—and, and, and I don't know. May, maybe they think it's okay to drive around. You get in a beef with somebody about some hillbilly crack meth issue and you get to get out your AR-15 and start chasing them down to a house

-2-

where there's an old man and teenaged girl and start shooting up their house with an AR-15.

And you know, you're damn lucky you're even sitting here because the, because the victim got into his house and he managed to grab a 12 gauge shotgun and pump the, a round that you, that grazed you that you're damn lucky he didn't cut your spine in two. . . .

The prosecution believed the probation department's recommendation of 150 months for the assault conviction was fair, but noted that there was no reason that the court should not impose a sentence at the top of the minimum guidelines range.

The court, however, decided to impose a sentence that exceeded the guidelines. The court reasoned:

[I]n balancing the four goals of sentencing, to punish, to deter, looking at the protection of the community, looking at your rehabilitation, I mean you present to the court at 30 years of age with, you know, not, not a significant criminal history. You've got some juvenile record, a misdemeanor, no felony record. You were unemployed. Although I suspect I know what, what your actual level of employment was.

It talks about methamphetamine down here in 2017 to 2019. I, I think we can probably change that right up to 2021, because I, I have little or no doubt that this has to do with some hillbilly crack activity that you were involved in.

But even if it was I mean, you know, you're out there with your—I, I, I don't know if the alleged victim in this case was involved in that or not. I don't know. There certainly wasn't evidence produced. But it certainly was evidence that suggested you were involved in the drug trade.

The guidelines in this matter call for, at, at the high end of the guidelines, you know, 180 months. So that divides down to 15 years at the high for assault with intent to murder.

* * *

. . . [I]f you look at the aggravating circumstances you got every one of them. I, I mean you're chasing this poor kid, young kid down. And you know, and I don't know what the deal is. I don't know if he moved in on your turf. I, I, I don't know if you, you, you owed him some, he owed you some money. I don't know what it was.

But you, you know, you armed yourself with a handgun and an AR-15 and in, in the, in, in the middle of the day started a, a, a high speed chase where you were firing a pistol and then you ultimately got an AR-15 and you fired it into an occupied dwelling with a senior citizen and, and a teenaged girl and a young man. And I mean there were multiple shells.

So, so I, I'm not going to sentence you to what, just within the guidelines. I'm going to exceed the guidelines.

And on top of that I think you have absolutely no remorse. You tell me you have no recollection. But, but I don't believe that. I think you knew exactly what you were doing.

So it's, on count number one, assault with intent to murder, I'm sentencing you to 20 to 30 years in the Department of Corrections.

And, and I, I want the, the, the, the appellate courts to understand that when I, when I look at your wanton and willful disregard, arming yourself with, with a handgun and then an assault rifle in the middle of the day, trying to run down another vehicle, firing multiple shots, the pursuing him into his home where you were outside but then fired active rounds into a, a home occupied by three people and, you know, I, I, I think that there's sufficient aggravating circumstances to justify that five years and I think it's proportional.

\* \* \*

And I've stated very clearly my substantial and compelling reasons for my departure. I think—and, and I'm highlighting your lack of remorse, the fact that you used multiple weapons, the fact that you, you know, pursued this young man over a long stretch of highway in the middle of the day, firing multiple different rounds at him, and I don't think those things were adequately considered by the sentencing guidelines. So I'm adding that additional five years to your prison sentence.[2]

This appeal by delayed leave follows.

## II. REASONABLENESS OF SENTENCE

## A. STANDARD OF REVIEW

King argues that the trial court's decision to impose a sentence that exceeded the recommended minimum guidelines range by 60 months resulted in an unreasonable and disproportionate sentence. Sentences that exceed the minimum guidelines range are reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). Michigan's sentencing guidelines are advisory in all cases, *id*. at 470; however, courts must

---

[2] We note that the trial court misstated the facts when justifying the sentencing decision. The record reflects that the shooting and high-speed chase occurred at 10:00 p.m. during March of 2020, and although shots were fired at Marshall's home, they only damaged the garage, not the house where Marshall's grandfather and sister were located.

"continue to consult the applicable guidelines range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 392. Nevertheless, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 475 (quotation marks and citation omitted). A trial court abuses its discretion when the sentence imposed by the trial court is disproportionate to the seriousness of the circumstances involving the offense and the offender. *Id*. at 461.

## B. ANALYSIS

To determine whether a sentence that exceeds the advisory guidelines range is more proportionate than a sentence within the guidelines, the sentencing court may consider "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017) (quotation marks and citations omitted). However, a defendant's Fifth Amendment right against self-incrimination "extends to the sentencing phase of the trial," making it unreasonable and improper for the sentencing court to punish a defendant for refusing to admit guilt. *People v Conley*, 270 Mich App 301, 314; 715 NW2d 377 (2006) (quotation marks and citation omitted). Indeed, "a sentencing court cannot base a sentence *even in part* on a defendant's refusal to admit guilt." *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007) (emphasis added). Therefore, even if the trial court's decision to exceed the guidelines was only partially based upon King's refusal to admit guilt, then the sentence would be unreasonable.

When evaluating whether a trial court's sentencing decision was improperly influenced by a defendant's failure to admit guilt, this Court considers the following factors:

> (1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. [*Dobek*, 274 Mich App at 104.]

There is no solid distinction between "a defendant's continued refusal to admit guilt and a defendant's lack of remorse." *People v Wesley*, 428 Mich 708, 720; 411 NW2d 159 (1987) (BRICKLEY, J. concurring, joined by LEVIN, J.).[3]

The first of the three factors that we must consider is the defendant's maintenance of innocence after conviction. *Dobek*, 274 Mich App at 104. At sentencing, King did not maintain his innocence of any of the offenses for which he was convicted. Rather, he apologized for everything that happened. Additionally, when asked by the trial court why he chased Marshall

---

[3] Justice BRICKLEY explained that if sentencing courts may not impose a higher sentence based on "a defendant's continued refusal to admit his guilt," they also may not do so "by finding a lack of remorse solely on the basis of that refusal." *Wesley*, 428 Mich at 724. Although concurring statements are not binding authority, these statements are instructive. See *Mays v Governor of Mich*, 506 Mich 157, 188; 954 NW2d 139 (2020).

down with a gun, King maintained that he did not remember. King never asserted that he did not shoot the guns at Marshall or that he did not have the intent to kill Marshall.

The second factor that we must consider is the trial court's attempt to get King to admit guilt. *Id*. We conclude that, based upon the sentencing record, the trial court attempted to get King to admit guilt notwithstanding that King maintained he did not remember the incident. The court asked King to explain his behavior, which prompted King to apologize for his actions but assert that he did not remember the incident. In response, the court repeatedly articulated that it did not believe that King did not remember anything. The court speculated that King's behavior was the result of a "drug deal that went awry" or "some hillbilly crack meth issue." Although the trial court did not explicitly demand that King admit guilt, the court nevertheless stated that King did, in fact, remember what happened and the court assumed that King was deliberately withholding information. We conclude that the court's statements were made to elicit an admission of guilt from King and when King refused to do so, the court chose to impose a sentence that exceeded the minimum guidelines range. See *Conley*, 270 Mich App at 303, 313-315 (holding that although the trial court never asked the defendant to admit his guilt, it did ask the defendant for the location of the gun used in the defendant's convicted offenses and, if the defendant had revealed that information, he would have incriminated himself). Similarly, in the present case, had King explained his behavior during the incident, he might have incriminated himself by admitting that he wanted to kill Marshall. Although he did not deny such an intent, his claim that he did not remember is not equivalent to an admission of guilt.

The third factor considers whether it appears that the sentence would not have been so severe if the defendant affirmatively admitted guilt. *Id*. Here, the trial court clearly did not believe King's claimed lack of memory regarding his motivation for chasing and shooting at Marshall. It then equated King's perceived untruthfulness with a lack of remorse. It partially justified its imposition of a sentence that exceeded the guidelines based upon King's lack of remorse. We conclude that, even though the court relied upon other aggravating factors, such as the seriousness of King's conduct, because the trial court made very clear its belief that King was lying when he stated that he did not remember why he chased Marshall and shot at him and because the trial court expressly relied, in part, on King's lack of remorse to depart from the guidelines, there is an appearance that King's sentence would not have been as severe had King admitted guilt. A sentence based even partially on a defendant's refusal to admit guilt is unreasonable and improper. *Id*. at 104. Therefore, because the trial court's departure sentence was likely based partially on King's refusal to admit guilt and King's lack of explanation, the trial court abused its discretion by imposing a sentence in excess of the sentencing guidelines.

We vacate King's sentence on the assault with intent to murder conviction and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Michael J. Kelly

-6-